**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 14a0603n.06**

**Nos. 13-1992/13-1993/13-1994**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| STRYKER CORPORATION and HOWMEDICA OSTEONICS CORPORATION, | ) ) ) |  |
|     Plaintiffs-Appellants/Cross-Appellees, | ) | ON APPEAL FROM THE UNITED |
|  | ) | STATES DISTRICT COURT FOR |
| TIG INSURANCE COMPANY, | ) | THE WESTERN DISTRICT OF |
|     Interested Party-Appellant | ) | MICHIGAN |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| XL INSURANCE AMERICA, fka Winterthur | ) |  |
| International America Insurance Company, | ) |  |
|     Defendant-Appellee/Cross-Appellant. | ) |  |

> **FILED**
> Aug 07, 2014
> DEBORAH S. HUNT, Clerk

BEFORE: GRIFFIN and DONALD, Circuit Judges; GRAHAM, District Judge.[*]

**JAMES L. GRAHAM, District Judge.** Stryker Corporation appeals the district court's ruling that Stryker is obligated to pay a $2 million self-insured retention ("SIR") under an insurance policy it held with XL Insurance America. XL cross-appeals the district court's rulings that XL is not entitled to recoup overpayments it made as part of a settlement with a third party and that XL must pay pre-judgment penalty interest.

For the reasons set forth below, the district court is AFFIRMED in all respects.

---

[*]The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

I.

The matter before the Court presents questions concerning the implementation of the Court's prior decision in this case, *Stryker Corp. v. XL Ins. America, Inc.*, 735 F.3d 349 (6th Cir. 2012) (hereinafter the "*Stryker I Appellate Opinion*").[1]  In the *Stryker I Appellate Opinion* the Court affirmed the district court's holding that XL was obligated to defend and provide coverage to Stryker under a Commercial General Liability umbrella policy for tort claims made against Stryker relating to defective artificial knee joints known as Uni-Knees.  *Id*. at 356.  The policy provided for $15 million in aggregate coverage, over a $2 million self-insured retention that Stryker was liable to pay.

Though affirming on the coverage issue, the Court reversed the district court's holding as to the consequences under Michigan law of XL's breach of its duty to defend and indemnify Stryker.  The district court, relying on the Sixth Circuit's interpretation of Michigan law in *Capitol Reproduction, Inc. v. Hartford Insurance Co.*, 800 F.2d 617, 624 (6th Cir. 1986), had held that XL became liable for the full amount of Stryker's losses, including the SIR and amounts exceeding the policy's $15 million limit.  This Court held that *Capitol Reproduction* was no longer good law and that XL was not liable for losses beyond $15 million unless Stryker could prove that they constituted consequential damages.  *Stryker I Appellate Opinion*, 735 F.3d at 358.

---

[1]In the Western District of Michigan, Stryker filed two lawsuits, known as *Stryker I* and *Stryker II*, in 2001 and 2005.  *See Stryker Corp. v. XL Ins. America, Inc.*, No. 4:01–cv–157, (W.D. Mich.) ("*Stryker I*"); *Stryker Corp. v. Nat'l Union Fire Ins. Co., et al.*, No. 1:05-cv-51 (W.D. Mich.) ("*Stryker II*").

It has been accurately observed that these insurance cases have "a long and tortured history."  *Stryker II*, 2013 WL 5533609, at *1 (W.D. Mich. Oct. 7, 2013).  Much of that history was described in the *Stryker I Appellate Opinion*, 735 F.3d at 352-54.

The Court next dealt with the issue of pre-judgment penalty interest under Michigan Compiled Laws § 500.2006. The Court affirmed the district court's finding that the statute applied against XL and affirmed the district court's methodology in calculating interest. *Stryker I Appellate Opinion*, 735 F.3d at 360-61. But because the Court had reversed the district court's ruling that XL was liable for losses beyond $15 million, it remanded for the district court to recalculate interest based on amounts for which XL was actually liable to Stryker. *Id.* at 361.

On remand, the parties disputed how the *Stryker I Appellate Opinion* should be implemented. The district court's prior rulings as to *Capitol Reproduction* had been delivered in two separate opinions. The first ruling held that XL's breach made it liable for the SIR, *Stryker I*, 2008 WL 68958 (W.D. Mich. Jan. 4, 2008) ("*First SIR Opinion*"), and the second held that XL's breach made it liable for losses in excess of the policy's limit of liability, *Stryker I*, 2009 WL 3256179 (W.D. Mich. Oct. 7, 2009) (directing the entry of final judgment) ("*Final Judgment Opinion*"). Stryker argued on remand that XL was still liable for the SIR because the *Stryker I Appellate Opinion* did not reverse the *First SIR Opinion* and that XL had waived its right to challenge the *First SIR Opinion* on appeal. The district court rejected both arguments. Though it found that the *Stryker I Appellate Opinion* did not expressly state that it was reversing the *First SIR Opinion*, the district court concluded that the Court's rejection of *Capitol Reproduction* meant that the *First SIR Opinion* was erroneous. *See Stryker I*, 2013 WL 504646, at *4 (W.D. Mich. Feb. 8, 2013) ("*Second SIR Opinion*"). The district court further declined to find a waiver where the Sixth Circuit had not found one. *Id.* ("This Court is not inclined to find a waiver of an appellate argument absent an explicit finding of waiver by the Sixth Circuit, especially when waiver was expressly argued to the appellate court."). The district court thus held on summary judgment that "[b]ecause the Sixth Circuit reversed this Court's SIR ruling, and because Stryker

has never contended that the $2 million in damages were proximately caused by XL's breach of the duty to defend, XL is entitled to rely on the $2 million SIR." *Id.*, 2013 WL 504646, at *5. Stryker now appeals that ruling.

XL cross appeals a separate aspect of the *Second SIR Opinion* concerning XL's assertion that it was entitled to recoup an alleged overpayment. This aspect of the district court's ruling requires a brief explanation of background. In 1998 Stryker acquired Howmedica, Inc., the manufacturer and distributor of Uni-Knees, from Pfizer, Inc. Under a stock and asset purchase agreement, Stryker agreed to defend and indemnify Pfizer for costs associated with any claims brought against Pfizer relating to Uni-Knees sold after the closing of the stock and asset purchase. Such claims were in fact brought against Pfizer, and Pfizer obtained a declaratory judgment that Stryker was liable to defend and indemnify Pfizer as to those claims. *See Pfizer, Inc. v. Stryker Corp.*, 348 F.Supp.2d 131 (S.D.N.Y. 2004). After XL denied Stryker's demand for coverage, Stryker brought suit in *Stryker II* against XL for coverage under the XL policy of Stryker's obligations to Pfizer. The court below held that XL was obligated to indemnify Stryker for an interlocutory judgment that had been entered in the *Pfizer* action. *Stryker II*, 2009 WL 56292 (W.D. Mich. Jan. 8, 2009). XL and Pfizer entered into a settlement on February 9, 2009 by which XL agreed to pay Pfizer $26 million to settle all of Stryker's liability to Pfizer.

XL structured the Pfizer settlement in a way that allocated certain amounts to the following categories: Pfizer's settlements with Uni-Knee tort plaintiffs, Pfizer's costs in defending the tort suits, Pfizer's litigation expenses in bringing suit against Stryker, and interest. The *Stryker I Appellate Opinion* held that XL could apply the settlement portion and the litigation expense portion toward the policy limit. 735 F.3d at 358-59. The amounts of those portions are not now in dispute – the settlement portion was $12,840,111 million and the

litigation expense portion was $3,054,344 – and together they exceed the $15 million limit by $894,455. On remand, XL argued that, assuming Stryker was liable for the SIR, XL was entitled to a credit for the overpayment. The district court rejected this argument, finding that XL had not made the overpayment under a mistake of fact, as XL had argued, but had made it voluntarily to a third party in order to settle a judgment. *See Second SIR Opinion*, 2013 WL 504646, at *5.

The Pfizer settlement also came into play on remand with respect to implementing the *Stryker I Appellate Opinion* on the issue of pre-judgment penalty interest. The district court's original interest award accrued on the amount of Stryker's settlements with tort plaintiffs who made direct claims against Stryker (as opposed to Pfizer). *See Stryker I*, 726 F.Supp.2d 754, 754-74 (W.D. Mich. 2010) ("*First Interest Opinion*"). The *Stryker I Appellate Opinion* instructed the district court on remand to award interest on amounts "for which XL is actually liable to Stryker." 735 F.3d at 361. XL then argued on remand that because XL exhausted the policy limit by paying the Pfizer settlement, it was no longer actually liable to Stryker for the settlements of direct Uni-Knee claims. The district court rejected XL's argument, holding that the *Stryker I Appellate Opinion* "did not disturb" its ruling that interest should accrue "on settlement payments Stryker made prior to the Pfizer settlement. . . . XL was actually liable for Stryker's settlements and was liable for penalty interest on those settlements until XL paid out the policy limits with the Pfizer settlement." *Stryker I*, 2013 WL 1194917, at *3 (W.D. Mich. March 22, 2013) ("*Third Interest Opinion*").[2]

## II.

"'The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.'" *United States v.*

---

[2]A *Second Interest Opinion* was issued by the district court concerning the end-date in the calculation of interest. *See Stryker I*, 726 F.Supp.2d 754, 774-78 (W.D. Mich. 2010).

*Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (quoting *United States v. Kikumura*, 947 F.2d 72, 76

(3d Cir. 1991)).  The mandate "'must be read with the analysis offered in the opinion.' *United*

*States v. Santonelli*, 128 F.3d at 1237-38 (8th Cir. 1997).  Thus, context matters."  *United States*

*v. O'Dell*, 320 F.3d 674, 681 (6th Cir. 2003).

"Interpretation of an appellate mandate is a legal issue which [this Court] reviews *de*

*novo*."  *United States v. Haynes*, 468 F.3d 422, 425 (6th Cir. 2006).  To the extent the

proceedings on remand raised issues not covered by the mandate, the Court reviews *de novo* the

district court's *Second SIR Opinion* in which it granted in part and denied in part XL's motion

for summary judgment, *see Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006), and

reviews for abuse of discretion the district court's *Third Interest Opinion* in which it awarded

interest, *see Stryker I Appellate Opinion*, 735 F.3d at 359.

A.

1.

The *Stryker I Appellate Opinion* held that *Capitol Reproduction* no longer reflected

Michigan law as to the liability imposed upon an insurer for breaching its duty to defend:

> The district court found that the self-insured retention and the aggregate limits of
> liability do not apply to the XL policy, because XL breached its duty to defend
> Stryker against both the direct claims and the claims in the Pfizer litigation.  *Final*
> *Judgment Opinion*, 2009 WL 3256179 at \*4.  In reaching both conclusions, the
> district court relied on *Capitol Reproduction, Inc. v. Hartford Insurance Co.*, 800
> F.2d 617, 624 (6th Cir. 1986), which held that "an insured is not required to prove
> that the amount of the judgment in excess of the policy limits was caused by the
> failure of the insurer to provide a reasonable defense...." (internal quotation marks
> and citation omitted).  In other words, any losses resulting from a breach of the
> duty to defend could be assumed to be consequential losses, and thus would not
> account against any limits of liability.
>
> While the *Capitol Reproduction* court may have correctly applied Michigan law
> at the time of the decision, subsequent Michigan decisions have undermined the
> rationale and holding of the case.  *Capitol Reproduction* holds that, in an
> insurance context only, all losses are assumed to be consequential losses, without

the breached party's having to demonstrate the connection between the loss and the breach. This is an extra-contractual rule of the kind the Michigan Supreme Court rejected in [*Frankenmuth Mut. Ins. Co. v. Keeley*, 433 Mich. 525, 447 N.W.2d 691 (1989) (Levin, J., dissenting), dissent adopted on rehearing, 436 Mich. 372, 461 N.W.2d 666 (1990)] and [*Wilkie v. Auto–Owners Ins. Co*., 469 Mich. 41, 664 N.W.2d 776 (2003)]. As a federal court sitting in diversity, we are obligated to apply the law of Michigan as it currently stands, even if such an application is inconsistent with prior case law from this circuit. . . .

For these reasons, we reverse the district court's judgment that the aggregate limit of liability of the XL policy does not apply to the judgments in *Stryker I* and *II*. On remand, the district court should consider what portion, if any, of the total liability for *Stryker I* and *II* judgments beyond $15 million represents consequential damages as defined under Michigan contract law.

*Stryker I Appellate Opinion*, 735 F.3d at 358.

Using the statement of "we reverse the district court's judgment that the aggregate limit of liability of the XL policy does not apply," Stryker argues that the prior panel intentionally refrained from reversing the *First SIR Opinion*. In further support, Stryker notes that the *First SIR Opinion* was not among the district court rulings identified by the Court in its review of *Stryker I*'s procedural history as among "six rulings that are relevant on appeal." *Id*. at 353.

We disagree and find that the *Stryker I Appellate Opinion* reversed the *First SIR Opinion*. Whether the *First SIR Opinion* was mentioned in the procedural history section is less significant than its inclusion in the Court's legal analysis on the issue of whether *Capitol Reproduction* was still good law. *See O'Dell*, 320 F.3d at 681 (stating that the appellate court's analysis must inform implementation of the mandate). And on that issue, the Court was clear that it was not. The *Stryker I Appellate Opinion* overturned *Capitol Reproduction* – the very holding that the Court had expressly stated was the underpinning of the district court's *First SIR Opinion*. The panel's rejection of *Capitol Reproduction* vitiated the legal basis of the *First SIR Opinion*, and it would not be within the spirit of the mandate to leave intact a lower court decision based upon a legally-erroneous foundation.

*Capitol Reproduction* concerned whether an insurer's breach of a duty to defend negated the insured's liability under the policy to pay a retained limit of liability. *Capitol Reproduction*, 800 F.2d at 624 (holding that the insured would be awarded "the full amount paid in settlement of the claim, along with fees incurred in the settlement, without deducting the $25,000 retained limit of liability provided for in the policy."). If *Capitol Reproduction* itself was a self-insured retention case, then the foremost implication of the *Stryker I Appellate Opinion*'s overturning of *Capitol Reproduction* is that the *First SIR Opinion* is erroneous.

Having rejected *Capitol Reproduction*, the Court then stated what the consequence of its ruling would be: "On remand, the district court should consider what portion, if any, of the *total liability* for *Stryker I* and *II* judgments *beyond $15 million* represents consequential damages as defined under Michigan contract law." *Stryker I Appellate Opinion*, 735 F.3d at 358 (emphasis added). The mandate thus made clear that XL would be liable for no more than the $15 million limit unless additional losses were consequential damages. Had the Court not been reversing the *First SIR Opinion*, then XL's base liability would have been $17 million. The Court's ruling thus restored the provisions of the XL policy, with Stryker being responsible for the $2 million SIR and XL liable for the $15 million limit.

2.

Stryker protests that XL waived its right to appeal the *First SIR Opinion* by failing to challenge it on appeal. Stryker made this argument to the prior panel, which chose not to address it and instead held that *Capitol Reproduction* was no longer good law. Moreover, Stryker's argument is unpersuasive in any event. XL's original Notice of Appeal and Amended Notice of Appeal both included the *First SIR Opinion* as a ruling it was appealing. And while XL did not explicitly request reversal of the *First SIR Opinion* in its appellate briefs, it consistently

maintained that the contractual limits and the face of the XL policy should be enforced, such that XL would be liable for no more the $15 million limit.  Further, XL argued at length in its briefs that *Capitol Reproduction* was contrary to Michigan law.  XL thus presented on appeal the legal argument that the district court had rejected in the *First SIR Opinion*, by implication taking the position that the *First SIR Opinion* was wrongly decided.

Stryker makes other waiver arguments that likewise lack merit.  Stryker argues that XL's decision to settle with Pfizer constituted a waiver because XL structured the settlement in a way that allocated $17 million (rather than $15 million) to items that XL believed would count toward the policy limit.[3]  However, the district court correctly observed that the Pfizer settlement "was not an admission of liability for the $2 million SIR."  *Second SIR Opinion*, 2013 WL 504646, at *4.  The manner in which XL allocated funds in settling a separate suit with a non-party to this action did not, without more, have a binding effect as between XL and Stryker with respect to the SIR.  Stryker was not a party to the Pfizer settlement, and it has not offered any coherent legal theory in support of its argument that the settlement constituted a waiver of the SIR issue.

Finally, Stryker argues that XL waived its right to challenge the *First SIR Opinion* by making certain representations to the district court and to this Court in the first appeal.  *See United States v. Johnson*, 752 F.2d 206, 210-11 (6th Cir. 1985) (attorney statements may bind the client).  These representations concerned XL's assurance that it would pay Stryker's defense costs in full.  Because some portion of the SIR includes defense costs, Stryker tries to argue that XL's statements were incompatible with the position that Stryker is liable for the SIR.  This argument is unpersuasive and ignores the context in which the statements were made.  At the

---

[3]It would later be held that XL's payment of $1.1 million for Pfizer's costs in defending the tort suits did not count toward the policy limit.  *Stryker I Appellate Opinion*, 735 F.3d at 359.

time, XL was operating under the district court's legal ruling that it was liable for the SIR. Rather than being admissions of liability for the SIR, XL's statements reflected its proper intention to comply with adverse rulings by the district court while those rulings were on appeal.

B.

With the district court's holding that Stryker is liable for the SIR affirmed, we turn to XL's assertion that it is entitled to a "credit" for the amount it paid over the policy limit to Pfizer. Before the district court, XL's legal theory was not clear; it did not file a counterclaim for recoupment, restitution or unjust enrichment,. In a one paragraph assertion that it should receive a credit, XL cited two cases standing for the proposition that a payment made pursuant to an insurance contract may be recovered it is was made under a mistake of material fact. *See Couper v. Metro. Life Ins. Co*., 250 Mich. 540, 544, 230 N.W. 929, 931 (Mich. 1930); *Auto–Owners Ins. Co. v. Fabian*, No. 213706, 2000 WL 33529723, at *1–3 (Mich. Ct. App. Feb. 25, 2000).

We affirm the district court's holding that XL has not demonstrated any mistake of fact in its payment to Pfizer. The settlement was a calculated decision to exhaust the policy limit and thereby bring a halt to pre-judgment interest. XL now cites § 35 of the Restatement (Third) of Restitution and Unjust Enrichment, arguing that, in light of the significant interest accruing, it had no reasonable choice but to make the overpayment. We find that § 35 offers no refuge to XL because it expressly provides that a contracting party, which is compelled by the circumstances to render over-performance, is entitled to restitution only if it performs under protest or with reservation of rights. *See* Restatement (Third) of Restitution and Unjust Enrichment § 35(1). XL did not do so here.

On appeal, XL raises another theory for the first time – that an insurer is entitled in equity to reimbursement if it made overpayments pursuant to a legal obligation that is later nullified by

judicial opinion. In support, XL cites a Michigan case regarding equitable restitution, *Mich. Educ. Emp. Mut. Ins. Co. v. Morris*, 460 Mich. 180, 197, 596 N.W.2d 142, 150-51 (Mich. 1999), and argues that it made the overpayment at a time when the district court's *First SIR Opinion* was still in effect.

Because this argument is raised for the first time on appeal, it need not be addressed. *See City of Detroit v. Simon*, 247 F.3d 619, 630-31 (6th Cir. 2001). A review of *Morris* underscores the problematic nature of XL asserting its theory for the first time on appeal. *Morris* states that under Michigan law an equitable right of restitution is recognized "when a person has been unjustly enriched at the expense of another." *Morris*, 460 Mich. at 197, 596 N.W.2d at 151. XL's theory is in fact an independent cause of action, *id.*, 460 Mich. at 197-98, 596 N.W.2d at 151, yet XL did not file, or seek leave to file, a counterclaim for equitable restitution.

## C.

## 1.

We affirm also the district court's holding on remand that Stryker is entitled to pre-judgment penalty interest under Michigan Compiled Laws § 500.2006 on the *Stryker I* indemnification portion, which is the amount of Stryker's settlements with direct Uni-Knee tort plaintiffs. XL argues that it should not be required to pay pre-judgment interest on the indemnification portion because, having exhausted the policy limit in payments to Pfizer, XL was not actually liable for that portion. XL points to language in the *Stryker I Appellate Opinion* stating that on remand the district court "should recalculate the pre-judgment award based on the total amount for which XL is actually liable to Stryker . . . ." *Stryker I Appellate Opinion*, 735 F.3d at 361. XL contends that it was merely potentially liable to Stryker for the indemnification

11

portion and never became actually liable because the limit was exhausted by the Pfizer settlement.

XL's focus on the "actually liable" language ignores the analysis employed in the *Stryker I Appellate Opinion* and the circumstances it embraced. The Court upheld the district court's application of § 500.2006 to the indemnification portion, rejecting XL's argument that an award of interest was subject to the "reasonable dispute" rule:

> Here, it is undisputed that Stryker is the claimant, because Stryker already paid off the third-party tort claims. The district court's rule is therefore a logical one and one that is consistent with the statutory language—as long as the "claimant" is a third-party, the "reasonable dispute" rule applies; the moment the "claimant" becomes the insured, it ceases to apply.

*Stryker I Appellate Opinion*, 735 F.3d at 361. The district court, however, had awarded interest on all of Stryker's losses, based on its application of *Capitol Reproduction*. With *Capitol Reproduction* repudiated, when the Court said that XL should not pay interest on amounts for which it was not actually liable to Stryker, it meant that XL should not pay interest on amounts "beyond the limits of liability." *Id*. at 361.

The Court expressly authorized an award of pre-judgment penalty interest on amounts within the limit, and it approved the district court's methodology in calculating interest. This is not a situation where the Pfizer settlement occurred after the issuance of the *Stryker I Appellate Opinion*. The settlement was already in place, and the Court held that certain Pfizer settlement portions could be used to exhaust the policy limit. *Id*. at 358-59. Against that backdrop, the Court affirmed the district court's holding that XL was liable to pay interest and said that interest should be assessed on amounts within the policy limit.

As the district court stated on remand, "XL was actually liable for Stryker's settlements and was liable for penalty interest on those settlements until XL paid out the policy limits with

the Pfizer settlement." *Third Interest Opinion*, 2013 WL 1194917, at *3. The district court entered final judgment in *Stryker I* after holding that XL was liable for the indemnification portion of Stryker's losses. The *Stryker I Appellate Opinion* affirmed the coverage ruling and the district court's holding that § 500.2006 applied. While clarifying that XL could use certain portions of the Pfizer settlement toward the policy limit, the Court left no doubt that XL had wrongfully denied Stryker's demand for coverage as to direct Uni-Knee claims. Stryker tendered its demand in August 2000, over two years prior to the filing of the *Pfizer* suit and over eight years prior to the Pfizer settlement. XL thus was liable for the *Stryker I* indemnification portion and wrongly refused to pay until it chose to pay the Pfizer settlement. In these circumstances, an award of penalty interest under § 500.2006 on the *Stryker I* indemnification portion is appropriate.

2.

XL argues that this interpretation of the *Stryker I Appellate Opinion* is contrary to the language of § 500.2006 itself. Its argument concerns two provisions of the statute. First, XL contends that the "benefits paid" element of the statute is not satisfied: "If benefits are not paid on a timely basis *the benefits paid* shall bear simple interest . . . at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance." Mich. Comp. Laws § 500.2006(4) (emphasis added). According to XL, it never paid benefits to Stryker and cannot be assessed interest.

Second, XL argues that an award of interest here would violate the following provision of the statute: "If the loss exceeds the limits of insurance coverage available, interest shall be payable based upon the limits of insurance coverage rather than the amount of the loss." Mich. Comp. Laws § 500.2006(4). XL contends that the indemnification portion of Stryker's loss is

13

beyond the policy limit, because the limit was exhausted by the Pfizer settlement and thus is ineligible for an interest award.

We disagree on both counts. A reasonable reading of the "benefits paid" language is that it refers to benefits that are not timely paid. The purpose of the statute is to penalize insurers who fail to timely pay benefits. *See* Mich. Comp. Laws § 500.2006(1); *Yaldo v. N. Pointe Ins Co.*, 457 Mich. 341, 348, 578 N.W.2d 272, 277 (Mich. 1998) (finding that the statute "applies when the insurance company is dilatory in making timely payments to the insured. Its purpose is to punish the insurance company."). Therefore, interest applies when a benefit is not timely paid or not paid at all. This Court has confirmed this seemingly obvious point. *See Stryker I Appellate Opinion*, 735 F.3d at 359-60 (noting that § 500.2006(4) applies to claims "not paid on a timely basis"); *see also Alticor, Inc. v. Nat'l Union Fire Ins. Co.,* 345 Fed. App'x 995, 1001 (6th Cir. 2009). XL's reading of the statute would produce the absurd result that interest could never apply when an insurer permanently refuses to pay benefits because there never would be "benefits paid."

XL's second argument too is unavailing. After the entry of final judgment in *Stryker I*, this Court affirmed the district court's coverage ruling and its holding that § 500.2006 applied. XL denied Stryker's demand for coverage for well over eight years, and § 500.2006(1) clearly imposed an obligation on XL to either timely pay its insured or pay penalty interest. The provision to which XL cites should not be used to defeat a straightforward application of the statute. Were it the case that the amount of the *Stryker I* indemnification portion alone exceeded the policy limit, then § 500.2006(4) would apply here to reduce the amount on which interest would be payable. But in the circumstances of this case, the language and intent of § 500.2006 is best effectuated by requiring XL to pay interest.

3.

Finally, XL argues that it entitled to set off the interest that XL paid Pfizer against its interest liability to Stryker. XL allocated $8.5 million of its settlement with Pfizer to pre-judgment interest. In support of its argument, XL cites the following statutory provision: "Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award." Mich. Comp. Laws § 500.2006(4).

This provision operates to prevent an insured from receiving both an award of pre-judgment penalty interest under § 500.2006 and a standard prejudgment interest award under Mich. Comp. Laws § 600.6013. *See McCahill v. Commercial Union Ins. Co.*, 179 Mich. App. 761, 776-80, 446 N.W.2d 579, 586-88 (Mich. Ct. App. 1989); *Angott v. Chubb Group Ins.*, 270 Mich. App. 465, 487 n.12, 717 N.W.2d 341, 355 n.12 (Mich. Ct. App. 2006).

XL's argument for an offset is novel and not supported by the statutory language. The difficulty arises from XL's attempt to match a payment of ordinary interest made to a party in one suit against an award of § 500.2006 interest payable to a different party in a separate suit. Courts have applied the offset only in situations where the right to standard interest and the right to penalty interest arise from the same award of benefits to an insured. *See*, *e.g.*, *McCahill*, 179 Mich. App. at 780, 446 N.W.2d at 588; *Angott*, 270 Mich. App. at 487 n.12, 717 N.W.2d at 355 n.12; *Michigan First Credit Union v. Cumis Ins. Soc. Inc.*, No. 05-cv-74423, 2009 WL 2245128, at *4 (E.D. Mich. July 27, 2009) ("[U]nder Michigan law . . . any penalty interest awarded under M.C.L. § 500.2006(4) shall be offset by any award of interest payable by the insurer pursuant to *that* award.") (emphasis added), *aff'd* 641 F.3d 240 (6th Cir. 2011).

With this traditional understanding of the statute and case law in mind, the district court found that XL is not entitled to the offset because § 500.2006 "is limited by its terms to interest

that it payable pursuant to 'the award.' [Mich Comp. Laws § 500.2006(4)]. Assuming the Pfizer settlement is 'an award,' it is not 'the award' that generated the penalty interest." *Third Interest Opinion*, 2013 WL 1194917, at *4. We agree and affirm with the observation that allowing an award of penalty interest does not contravene the purpose of the offset provision because Stryker has not otherwise received an award of pre-judgment interest.

III.

We AFFIRM the district court's *Second SIR Opinion* and *Third Interest Opinion* in their entirety.