**Waymer MOORE and Infant Doe by her Next Friend John Smith, Plaintiffs,**

v.

**Earvin JOHNSON, Jr., Defendant.**

No. 5:92:CV:125.

United States District Court,
W.D. Michigan.

July 22, 1993.

Webb A. Smith, Theodore W. Swift, Michael J. Bommarito, Foster, Swift, Collins & Smith, PC, Nan Elizabeth Casey, Reynolds & Guyselman, PC, Lansing, MI, Ingham, for plaintiffs.

James S. Brady, Stephen R. Ryan, Miller, Johnson, Snell & Cummiskey, Grand Rapids, MI, Kent, for Grand Rapids Press.

Stuart J. Dunnings, Jr., Shauna L. Dunnings, Dunnings & Frawley, PC, Lansing, MI, Ingham, Howard L. Weitzman, Karen Randall, David Phillip Kaplan, Michele Monique Desoer, Katten, Muchin, Zavis & Weitzman, Los Angeles, CA, for defendant.

Leonard M. Niehoff, James E Stewart, Butzel Long, Detroit, MI Wayne, for the Detroit News.

Harry Contos, Jr., Miller, Johnson, Snell & Cummiskey, Kalamazoo, MI, for the Kalamazoo Gazette.

Herschel P. Fink, Michael A. Gruskin, Honigman, Miller, Schwartz & Cohn, Detroit, MI, Wayne, for Detroit Free Press.

## OPINION

ENSLEN, District Judge.

This case is before the Court on defendant's motion to dismiss the seventh cause of action alleged in plaintiffs' second amended complaint. This motion is brought under Federal Rule of Civil Procedure 12(b)(6). This count alleges intentional infliction of emotional distress as to Infant Doe.

### Facts

The events giving rise to this case are well-known by the parties. Nonetheless, for purposes of this Opinion, I will briefly detail the relevant facts. Plaintiff, Waymer Moore, alleges that defendant, Earvin Johnson, Jr., wrongfully transmitted the human immunodeficiency virus ("HIV virus") to her through consensual sexual contact. Ms. Moore alleges that the wrongful transmission of the HIV virus occurred on or about the evening of June 22, 1990, or the morning of June 23, 1990, or both, at her home in Ingham County, Michigan. Plaintiffs' Complaint at 3–4. Ms. Moore and Mr. Johnson had "sexual contact" which allegedly led to the transmission of the HIV virus. Ms. Moore alleges that immediately prior to the encounter, she asked Mr. Johnson to use a condom. Mr. Johnson allegedly refused to do so. Nonetheless, Ms. Moore engaged in consensual sexual contact with Mr. Johnson. *Id.* at 4. Ms. Moore alleges that Mr. Johnson knew, or should have known, that he had the HIV

virus at the time of their sexual contact. As such, he is liable to her for wrongful transmission of the HIV virus on a number of legal theories.[1]

With respect to count VII, plaintiffs argue that Mr. Johnson intentionally inflicted emotional distress as to Ms. Moore's daughter, Infant Doe. Specifically, plaintiffs allege:

61. At the time Mr. Johnson engaged [in sexual contact with Ms. Moore], he was aware that Infant Doe was [Ms. Moore's] daughter; he was aware that Infant Doe's father and [Ms. Moore] were separated; he was aware that Infant Doe was emotionally and financially dependent upon [Ms. Moore]; he was aware that Infant Doe was living with [Ms. Moore]; and he was aware that the relationship between Infant Doe and [Ms. Moore] was precious to Infant Doe.

62. At the time Mr. Johnson engaged [in sexual contact with Ms. Moore], he was substantially certain that Infant Doe would suffer severe emotional distress if he transmitted the HIV virus to [Ms. Moore].

63. Mr. Johnson engaged [in sexual contact with Ms. Moore] with the intention of causing Infant Doe to suffer severe emotional distress or, by his conduct, acted with such reckless indifference toward Infant Doe as to show no regard for her safety, health, or emotional well being.

Plaintiffs' Second Amended Complaint ¶¶ 61–63.

### Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Davis H. Elliot Co., Inc. v. Caribbean Utils. Co.,* 513 F.2d 1176, 1182 (6th Cir.1975). Technically, of course, the 12(b)(6) motion does not attack the merits of the case. It merely challenges the pleader's failure to state a claim properly. 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1364, at 340 (Supp.1990). In deciding a 12(b)(6) motion, the court must determine whether plaintiffs' Complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in

the Complaint at "face value" and construe them in the light most favorable to plaintiffs. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984); *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1034–35 (6th Cir.1979).

■ The Complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen,* 495 F.Supp. 822, 827 (E.D.Mich.1980). The court cannot dismiss plaintiffs' Complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermillion Foam Prods. Co. v. Gen. Elec. Co.,* 386 F.Supp. 255 (E.D.Mich.1974).

### Discussion

■ In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme or outrageous conduct; (2) which intentionally or recklessly, (3) causes, (4) extreme emotional distress. *McCahill v. Commercial Ins. Co.,* 179 Mich. App. 761, 768, 446 N.W.2d 579 (1989). Similarly, the Restatement of Torts defines intentional infliction of emotional distress as follows:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liabili-

---

1. For a more detailed discussion of these legal theories, as well as a lengthier description of the

facts, *see Doe v. Johnson,* 817 F.Supp. 1382 (W.D.Mich.1993).

ty if he intentionally or recklessly causes severe emotional distress.

>    (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

>    (b) to any other person who is present at the time, if such distress results in bodily harm.

Restatement (Second) of Torts § 46 (1965).

■ Defendant argues in his motion to dismiss that Infant Doe has failed to state a claim for intentional infliction of emotional distress because, among other things, as a third person,[2] she was not physically present when defendant's alleged conduct occurred. After-the-fact discovery of defendant's alleged outrageous conduct directed towards her mother would not suffice to state a claim. *Gustafson v. Faris,* 67 Mich.App. 363, 241 N.W.2d 208 (1976). Moreover, defendant argues that the Complaint fails to allege any conduct by defendant directed towards Infant Doe, which is required under this tort.

Plaintiffs respond by arguing that Infant Doe is not attempting to state a claim under a third-party theory (or under the "bystander" rule). Instead, plaintiffs argue that defendant's actions were directed with intent to harm Infant Doe. At the very least, plaintiffs state, defendant acted with "reckless indifference" toward Infant Doe. In support of their argument, plaintiffs rely on an illustration set forth in the Restatement. This illustration provides:

> During A's absence from her home, B attempts to commit suicide in A's kitchen by cutting his throat. B knows that A is substantially certain to return and find his body, and to suffer emotional distress. A finds B lying in her kitchen in a pool of gore, and suffers severe emotional distress. B is subject to liability to A.

Plaintiffs' Brief at 5 (quoting 1 Restatement Torts 2d § 46, comment i, illustration 15 at 77).

Plaintiffs argue that Infant Doe's claim for intentional infliction of emotional distress is analogous to this illustration. That is,

> [S]he alleges that Mr. Johnson has ended her mother's life, that he did so knowing that she, the infant, would discover his actions, and that Johnson did so with the intention of causing her to suffer severe emotional distress, or with the knowledge that she was substantially certain to suffer severe emotional distress, or acted recklessly in deliberate disregard of a high degree of probability that she would suffer severe emotional distress.

Plaintiffs' Brief at 5.

The Court does not agree with plaintiffs' assertion that illustration 15 is the proper analogy for the consideration of the emotional distress claim. I believe that the following example is more on point:

> A has a child, C. A and C live in the same house. One day C is absent from her home. B, an intruder, enters the home of A and C and kills A (during C's absence). C comes home at some point after the murder and finds A, her parent, lying in the kitchen in a pool of gore, and suffers severe emotional distress.

In such a hypothetical case, does C have a claim against B for intentional infliction of emotional distress? Fortunately, the courts in Michigan have addressed similar fact scenarios, all holding that a cause of action was not stated. For instance, in *Pate v. Children's Hospital of Michigan,* 158 Mich.App. 120, 404 N.W.2d 632 (1986), the court held that the plaintiff failed to state a claim for intentional infliction of emotional distress when her fourteen-year-old sister died in her arms allegedly as a result of the defendants' malpractice. *Id.* at 121, 404 N.W.2d 632. In *Pate,* the alleged negligent, or reckless, act which ultimately led to the death of plaintiff's sister, occurred two days prior to her death. Because plaintiff was not present at the time of the alleged negligent or reckless act, as

---

**2.** In Michigan, where a third person can bring a claim for intentional infliction of emotional distress, it is referred to as the "bystander rule." *See Pate v. Children's Hospital of Michigan,* 158 Mich.App. 120, 404 N.W.2d 632 (1986) ("clearly contemplates [that the bystander (a close rela-

tive) witness] a sudden, brief, and inherently shocking accidental event which causes the injury or death, which contemporaneously, and by its very nature, results in emotional and physical injury to the plaintiff.").

well as plaintiff's failure to plead a "shocking and sudden" event, the court dismissed plaintiff's claim.

Besides the Michigan case law on this issue, the Court has found a law review which is helpful. *See* Note, *Murder and the Tort of Intentional Infliction of Emotional Distress,* 1986 Duke L.J. 572 (1986). Among other things, this Note examines the cases which have considered emotional distress cases brought by a relative of a murder victim. This article states:

> There have been only a handful of instances ... in which actions have been brought seeking recovery for emotional distress stemming from the murder of a third party. Courts generally have been unwilling to grant recovery on this basis *only* in cases where the plaintiff was both related to the murder victim and present at the scene of the murder. Furthermore, one court refused to recognize an action for emotional distress stemming from the murder of a third party on the ground that the state's wrongful death statute "occupied the field" and thus precluded a common law recovery.

*Id.* at 572 (citations omitted).

Essentially, Infant Doe is bringing a claim for murder of her mother. Like the plaintiff in *Pate*, as well as the plaintiffs addressed in the Note cited immediate above, Infant Doe has not properly pled [3] an emotional distress claim. Very simply, she was not present when the alleged act occurred.

I realize that plaintiffs disagree with the position taken by the Court. They argue that Infant Doe did not need to be present because Mr. Johnson intended to harm her by injuring Ms. Moore. Although clever, I find that plaintiffs' argument is essentially a "Trojan Horse." That is, they are attempting to masquerade a bystander liability claim as a general emotional distress claim. If this Court were to allow plaintiffs' Trojan Horse through the gates of Rule 12(b)(6), then the bystander rule could very well become eviscerated. In a case like *Pate* (or this case), when a person is injured or killed, his or her

close relatives could argue that the defendant "intended" to cause harm to them, even though they were not present at the site of the injury. I highly doubt that the Michigan courts would appreciate such an extension of the emotional distress tort. *Cf. Nugent v. Bauermeister,* 195 Mich.App. 158, 160, 489 N.W.2d 148 (1992) ("These limitations [on the bystander liability doctrine] have consistently been applied by this court ....").

■ Further, I note that count V of plaintiffs' second amended complaint states a claim on behalf of Infant Doe for loss of consortium. As discussed above, at least one court has refused to recognize an action for emotional distress stemming from the murder of a third party on the ground that the state's wrongful death statute "occupied the field" and thus precluded a common law recovery. Note, *Murder and the Tort of Intentional Infliction of Emotional Distress,* 1986 Duke L.J. 572 (1986) (citing *Garland v. Herrin,* 724 F.2d 16, 20 (2d Cir.1983)). While the *Garland* case is distinguishable from the case before me on a number of grounds, I do find persuasive the argument that a plaintiff is not precluded from recovery entirely when a close relative is injured or killed (and when the plaintiff is not present). Such a plaintiff can sue on a loss of consortium theory, like Infant Doe in this case.

Accordingly, defendant's motion to dismiss count VII of plaintiffs' second amended complaint is granted.

### PARTIAL JUDGMENT

In accordance with the Opinion entered this date;

**IT IS HEREBY ORDERED** that defendant's motion to dismiss seventh purported cause of action alleged in plaintiffs' second amended complaint, filed March 9, 1993, is **GRANTED;**

**IT IS FURTHER ORDERED** that **JUDGMENT** is **GRANTED** in favor of defendant and against all plaintiffs with respect

---

**3.** Furthermore, given the facts of this case, there is no scenario in which Infant Doe could properly plead an emotional distress claim.

to **count VII** of plaintiffs' second amended complaint.