*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0192p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JULI GARRETSON,

        *Plaintiff-Appellant,*

    *v.*

CITY OF MADISON HEIGHTS, MADISON HEIGHTS
POLICE DEPARTMENT, JOHN DOE(S), Madison
Heights Police Officers, PETER ALTOBELLI, JEREMY
DIXON, and ANTHONY ROBERTS,

        *Defendants-Appellees.*

No. 04-1046

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 02-73219—Victoria A. Roberts, District Judge.

Argued: February 3, 2005

Decided and Filed: April 27, 2005

Before: SILER, COLE, and CLAY, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Alyson L. Oliver, Waterford, Michigan, for Appellant. Marcia L. Howe, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellees. **ON BRIEF:** Alyson L. Oliver, Waterford, Michigan, for Appellant. Marcia L. Howe, JOHNSON, ROSATI, LaBARGE, ASELTYNE & FIELD, Farmington Hills, Michigan, for Appellees.

---

**OPINION**

---

SILER, Circuit Judge. Plaintiff Juli Garretson was arrested by the Madison Heights Police Department on charges of retail fraud. During the booking process, Garretson informed police that she was an insulin-dependent diabetic and that she would need insulin that night. Garretson alleges that the police denied her insulin and that she was subsequently hospitalized for diabetic ketoacidosis. Garretson filed suit in the Eastern District of Michigan against the City of Madison Heights ("City"), the Police Department, Officers Peter Altobelli and Jeremy Dixon, Detective Anthony Roberts, and an unnamed officer, John Doe. She alleged violations of 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, and state law claims for intentional infliction of emotional distress and gross negligence. Madison Heights's

1

motion for summary judgment was granted.  We AFFIRM in part and REVERSE and REMAND in part.

## I.  BACKGROUND

Garretson was arrested by Officers Altobelli and Dixon of the Madison Heights Police Department for retail fraud in 2001.  She was transported to the Madison Heights lock-up facility where she allegedly informed the booking officer, Altobelli, of her diabetic condition and that she was late for her current dose of insulin.  Altobelli informed her that insulin would not be supplied, but that she could make arrangements for insulin to be delivered and that the jail would administer it upon delivery.  Garretson then requested a transfer to the Oakland County jail, as she knew from a previous stay that it would provide insulin.  The request was denied, and no arrangements were made to acquire and administer insulin to her.

After booking, Garretson was placed in a holding cell.  She claims that she informed the John Doe officer who escorted her to this cell of her medical needs, and he allegedly responded that he would "see what he could do."  She claims that throughout the night she suffered symptoms of insulin deprivation and high blood sugar and that she knocked on the cell door to get assistance, with no response.  The cell contained an activated telephone, but Garretson made no calls.

The next morning she was questioned by Detective Roberts.  Garretson informed him of her condition and her desire for treatment.  After concluding his interrogation, he arranged for her to receive emergency medical treatment.  At that time Garretson was not exhibiting physical symptoms of distress, and she was returned to her cell.  Paramedics arrived, and she was transported to an emergency room.  Following treatment, she was arraigned.  She was then transported to North Oakland Medical Center where she remained for several days, receiving treatment for diabetic ketoacidosis.

Garretson filed suit against the City and the Police Department (collectively "Madison Heights," unless otherwise noted), and several individual police officers.  She asserted respondeat superior liability pursuant to 42 U.S.C. § 1983; violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution; intentional infliction of emotional distress; and gross negligence.  The district court granted Madison Heights's motion for summary judgment in its entirety.  Garretson only appeals the judgment as to the Fourteenth Amendment claims and the state law claims for emotional distress and gross negligence.

## II.  STANDARD OF REVIEW

This court reviews de novo the district court's grant of summary judgment. *Farhat v. Jopke*, 370 F.3d 580, 587 (6th Cir. 2004). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III.  DISCUSSION

### A.  FOURTEENTH AMENDMENT

Garretson has asserted a claim against Madison Heights and several individual officers under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.[1]  The Fourteenth Amendment's Due Process Clause grants pretrial detainees a right to adequate medical treatment – a right analogous to the Eighth Amendment rights of prisoners.  *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2002).

### 1. Madison Heights

The language of § 1983 does not create municipal liability "unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978).  Additionally, "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Id*; *see also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) ("While a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional violation directly attributable to it, § 1983 does not impose vicarious liability on a municipality for the constitutional torts of its employees.").  To prove her case, Garretson must show that the Madison Heights officers acted with deliberate indifference to her medical needs.  *Stemler*, 126 F.3d at 865, 870.  This is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 865 (internal quotations omitted).  Furthermore, Madison Heights can only be liable under § 1983 if the risks of a constitutional violation were plainly obvious.  *Id*. (citing *County Comm'rs of Bryan County v. Brown*, 520 U.S. 397 (1997)).

Garretson argues that Madison Heights's conduct, and that of its police officers, was premised on an unwritten custom of not providing medical attention to pre-trial detainees prior to arraignment– a policy or custom of inaction.  She refers to the "Madison Heights Policy on Medical Care while in Custody" to support her position.  Such an alleged policy of inaction "must reflect some degree of fault before it may be considered a policy upon which § 1983 liability may be based."  *York v. City of Detroit*, 475 N.W. 2d 346, 353 (Mich. 1991) (citing *Canton v. Harris*, 489 U.S. 378 (1989)).  Garretson must show: (1) a clear and persistent pattern of mishandled medical emergencies for pre-arraignment detainees; (2) notice, or constructive notice of such pattern, to Madison Heights; (3) tacit approval of the deliberate indifference and failure to act amounting to an official policy of inaction; and (4) that the custom or policy of inaction was the "moving force," or direct causal link, behind the constitutional injury.  *See Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996).

Here, there is no evidence that Madison Heights, or its Police Department, had a custom of denying medical treatment to pre-arraignment detainees.  Nor is there evidence that Madison Heights had notice of a "clear and persistent pattern" of such treatment demonstrating the existence of a policy of inaction.  Nor, as the district court noted, is there evidence that Madison Heights was the "moving force" behind Garretson's injuries.  Therefore, the decision of the district court that the City, and its Police Department, are entitled to summary judgment on the § 1983 claims is AFFIRMED.

---

[1]Garretson maintains that her claim under the Fourteenth Amendment is grounded in both substantive due process, which affords her personal safety and the right to medical care, and the Equal Protection Clause, which affords her the right to fair and equal treatment.  She bases this claim on the alleged denial of therapeutic insulin, resulting in her hospitalization.

*2. The Individual Officers*

Qualified immunity is an affirmative defense available to government officials performing discretionary functions. *See generally Owen v. City of Independence*, 445 U.S. 622, 652-53 (1980). This issue of qualified immunity for the individual officers was not addressed by the district court. Apparently, having decided that summary judgment was appropriate on the merits of Garretson's claims, the court determined issue of qualified immunity was moot. However, this issue must be addressed more closely here.

We must first determine whether Garretson has "alleged facts which, when taken in the light most favorable to her, show that the [officers'] conduct violated a constitutionally protected right." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (citing *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001)). If this threshold question is answered affirmatively, we then address whether such right was clearly established at the time of the violation. *Id*.

*(a)  Constitutional Violation*

Garretson alleged that individual Madison Heights officers violated her Fourteenth Amendment rights by exhibiting a deliberate indifference to her medical needs while she was detained pretrial in the Madison Heights jail. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985)). *See also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). This claim has objective and subjective components. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). The objective component requires a showing that the alleged deprivation is sufficiently serious – that she was incarcerated "under conditions posing a substantial risk of serious harm." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In *Napier*, we held that an incarcerated plaintiff who complains that a delay in medical treatment violates her constitutional rights must present "verifying medical evidence" to establish the detrimental effect of the delay. 238 F.3d at 742-43. Here, Garretson is a diabetic whose condition required insulin injections at regulated intervals – a medically required treatment which she did not receive while housed at Madison Heights. As a result of this omission, she was later admitted to the hospital. Even without specific medical records, the emergency hospital admission coupled with a stay of several days satisfies the objective requirement of a "sufficiently serious" medical need under *Farmer* and *Napier*.

Garretson must also show that the officers subjectively had "a sufficiently culpable state of mind in denying [her] medical care." *Blackmore*, 390 F.3d at 865 (citing *Farmer*, 511 U.S. 825 at 834). Deliberate indifference is not mere negligence; instead, it requires that the officers "knew of and disregarded a substantial risk of serious harm to [Garretson's] health and safety." *Watkins*, 273 F.3d at 686 (citing *Farmer*, 511 U.S. at 835-37). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment. *Watkins*, 273 F.3d at 686 ("It is not enough that there was a danger of which an officer should objectively have been aware."). *See Farmer*, 511 U.S. at 837. Thus, it is insufficient for Garretson to show "a question of fact whether the police officers . . . *should have* known" that she was at risk of ketoacidosis or other diabetic illness, she must also show that they did know of her serious medical condition. *See Watkins*, 273 F.3d at 686.

This subjective component must be addressed for each officer individually. Garretson asserts that Altobelli, Dixon, Roberts, and an unnamed officer each had sufficient indication of her condition that their failure to obtain medical treatment for her constituted indifference. However, neither Dixon nor Roberts appear to meet the *Farmer* standard. Dixon apparently had no knowledge of Garretson's diabetic condition. Garretson did not tell him that she was an insulin dependent

diabetic, and he was not present at her booking when she divulged this information. Without this knowledge he cannot have inferred that serious harm could befall Garretson without insulin.

Similarly, Garretson has not shown that Roberts acted with the required "culpable state of mind." *See Blackmore*, 390 F.3d at 896. Roberts had no prior notice of Garretson's insulin dependence or of her deteriorating condition during her interview. Indeed, after she notified him of her condition, Roberts obtained emergency medical aid for her. Although he did not summon assistance at the beginning of the interview, as he probably should have, any delay cannot be said to show that he "knew of and disregarded a substantial risk of serious harm" to her health and safety. *See Watkins*, 273 F.3d at 686. Therefore, there is no genuine issue of material fact as to whether Dixon and Roberts acted with deliberate indifference to Garretson's medical care so the grant of summary judgment to Dixon and Roberts was proper.

However, with regard to Altobelli and the unnamed officer, the analysis is different. Garretson informed Altobelli at her booking that she required insulin for her condition and that she was past due for her current dose. Garretson contends that she informed the unnamed officer of her condition in detail when he escorted her to her holding cell. Both officers were allegedly aware of facts from which the inference of substantial risk of harm could be drawn. *See Blackmore*, 390 F.3d at 896; *Farmer*, 511 U.S. at 837. Therefore, viewing these facts in the light most favorable to Garretson, we conclude that there is a genuine issue of material fact as to whether Altobelli and the unnamed officer acted with deliberate indifference to Garretson's medical needs.

### (b)  Clearly Established Law

Having determined that a genuine issue regarding the violation of Garretson's Fourteenth Amendment rights by Altobelli and the unnamed officer exists, we must now determine if either is entitled to qualified immunity. *Comstock*, 273 F.3d at 702 (citing *Saucier*, 533 U.S. at 201-02). "Whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1094 (6th Cir. 1992) (internal citations and quotations omitted).

Defendants bear the initial burden of pleading this defense. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 1991). Then, Garretson must show that the officers' behavior during her detention violated a right so clearly established that they reasonably should have understood their affirmative duties to act otherwise. *Id.* (citing *Rich*, 955 F.2d at 1095). Garretson bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity. *Id.* (citing *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991)). To determine if qualified immunity applies, it is necessary to determine: (1) whether there is a factual dispute on which the question of their immunity turns, and (2) what the state of the law was at the time of Garretson's detention. *See Rich*, 955 F.2d at 1095.

If a state has a "special relationship" with an individual, such as a custodial relationship, then it may have an affirmative duty of protection. *Sheets*, 287 F.3d at 587. Thus, under the Fourteenth Amendment, the state has a duty to provide pre-trial detainees with adequate medical care. However, *Rich* indicates that Garretson must assert a "particularized" right to medical care. 955 F.2d at 1098. The particularized right asserted here is the right to obtain therapeutic insulin. There is a potential legal question as to the existence of this particular right, and it must be decided as a threshold question. This is particularly true in light of our conclusion that: "The *Danese* court did, however, recognize that if a prisoner with a serious medical injury requested help and was ignored, such circumstances could give rise to a deliberate indifference claim." 955 F.2d at 1097 n.3 (citing *Danese*, 875 F.2d at 1244).

Both Altobelli and the unnamed officer appear to have violated clearly established law. *Id.* They knew that Garretson was an insulin-dependent diabetic who was past due for treatment. And, they arguably denied her insulin by either not seeking medical help for her or failing to transfer her to a location where she could receive treatment after she notified them of her immediate health needs. Accordingly, the grant of summary judgment to Altobelli and the unnamed police officer was in error.

## B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under Michigan law, to state a claim for intentional infliction of emotional distress, Garretson must allege extreme or outrageous conduct which, intentionally or recklessly, causes extreme emotional distress. *Moore v. Johnson*, 826 F. Supp. 1106, 1108 (W. D. Mich. 1993) (citing *McCahill v. Commercial Ins. Co.*, 446 N.W. 2d 579, 582 (Mich. App. 1989)).

"Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. App. 1995). Liability will not be found for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"; rather, the case must be one in which the facts would arouse the resentment of an average member of the community against the actor, leading him to exclaim, "Outrageous!" *Id.* (citing *Roberts v. Auto-Owners Ins. Co.*, 374 N.W. 2d 905, 908-09 (Mich. 1985)).

The distinction between conduct which might lead one to exclaim "outrageous," and that which is merely "petty oppression," is key. *Apostle v. Booth Newspapers, Inc*., 572 F. Supp. 897, 907 (W.D. Mich. 1983). It is generally the duty of the trial court to determine whether a defendant's alleged conduct may reasonably be regarded as so "outrageous." *Doe*, 536 N.W.2d at 834. Where reasonable minds may differ, the question is for the jury. *Id.* However, the failure of officers to notice symptoms of ketoacidosis is not "outrageous" conduct.

"A plaintiff can show that a defendant specifically intended to cause a plaintiff emotional distress or that a defendant's conduct was so reckless that 'any reasonable person would know emotional distress would result.'" *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. App. 2003). Garretson has not offered proof that the officers *intended* to subject her to emotional distress by specifically denying her medical treatment. Nor has she shown that by allegedly neglecting her medical care, officers would expect her to experience emotional distress.

Additionally, the tort requires actual "emotional distress." Actionable emotional distress is characterized by some egregious mistreatment which is "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Apostle*, 572 F. Supp. at 907 (citing Restatement (Second) Torts § 46, cmt. d). Here, Garretson contends her "awful time altogether" with the Madison Heights police scarred her emotionally and left her suffering from "mental and emotional situations," which she describes as "the fear of being in public places and encountering the police." By her own estimate she has been convicted at least five times and experienced a similar diabetic episode in another jail. She has not shown a sufficient distress or causal connection between her "fear" and the Madison Heights episode to meet the elements of intentional infliction of emotional distress.

However, in Michigan, a special relationship between the parties may lower the level of conduct needed to be actionable. *See Apostle*, 572 F. Supp. at 907(citing *Ledsinger v. Burmeister*, 318 N.W. 2d 558 (Mich. App. 1982)). "The court noted that the language used should be viewed in its context, and that the court should also take into consideration the fact of abuse of a relationship, such as that of a merchant to a customer." *Id*. at 907-08. In *Ledsinger* the defendant

expelled a black customer from his store while using racial epitaphs. *Id*. at 907. And, after *Fry v. Ionia Sentinel-Standard*, 300 N.W. 2d 687 (Mich. App. 1980), "the abuse of the relationship between a news reporter, and a subject of that report may be so extreme as to rise to the level of extreme and outrageous conduct defined by the cases." *Apostle*, 572 F. Supp. at 908. The *Apostle* court noted, "Summary judgment is not appropriate where the facts surrounding the conduct are contested." *Id*. However, the facts of this case are less disputed than those in *Ledsinger*. Furthermore, the underlying conduct of the police, i.e., the negligent denial of insulin, does not reach the same level of intent as racial slurs coupled with expulsion. Even accepting a special relationship between a detainee and the police, the conduct here did not reach the level required for intentional infliction of emotional distress and the district court's grant of summary judgment was appropriate.

## C. GROSS NEGLIGENCE

### 1. Madison Heights

Madison Heights has governmental immunity on Garretson's gross negligence claim. Section 697.1407 of the Michigan Compiled Laws provides the following:

> Sec. 7. (1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

Mich. Comp. L. § 691.1407. "It is well-settled that the management, operation and control of a police department is a governmental function and that tort actions against a municipality based on the negligence of its police officers, occurring while the officer is engaged in a discharge of that function, are barred by the doctrine of governmental immunity." *Moore v. City of Detroit*, 340 N.W.2d 640, 643 (Mich. App. 1983). No evidence has been offered showing that the officers involved here were not engaged in a discharge of their governmental functions. Therefore, Madison Heights and its Police Department are entitled to the protection of the governmental immunity statute.

### 2. The Individual Officers

Regarding the individual police officers, § 691.1407 states:

> (2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> > (a) The officer ... is acting or reasonably believes he or she is acting within the scope of his or her authority.
> > (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The officer's...conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Police officer defendants "can claim the protection of governmental immunity from tort liability unless they were acting in so reckless a manner as to constitute 'gross negligence.'" *Cebreco v. Music Hall Ctr. for the Performing Arts, Inc.*, 555 N.W.2d 862, 866 (Mich. App. 1996). Gross negligence is defined by the statute as: "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. L. § 691.1407(7)(a); *see also Jennings v. Southwood*, 521 N.W.2d 230, 235 (Mich. 1994) (recognizing the gross negligence standard delineated by statute).

Officer Dixon and Detective Roberts did not reach this high threshold. Dixon was unaware of Garretson's condition entirely, and Roberts sought medical treatment for her. In either case, neither exhibited the required lack of concern regarding Garretson's health and potential injury. However, Officer Altobelli, who was informed at booking that Garretson was an insulin-dependent diabetic who was past due for treatment, did potentially exhibit culpable conduct, as did the unnamed officer from whom Garretson requested help while being taken to her holding cell. Accordingly, Dixon and Roberts are entitled to the protection of the governmental immunity statute while Altobelli and the unnamed officer are not.

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court with regard to the City, the Police Department, Officer Dixon and Detective Roberts is AFFIRMED. With regard to Officer Altobelli and the unnamed officer, the decision of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.