NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 19a0584n.06

Case No. 19-1428

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 02, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CARLO VARTINELLI, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| ARAMARK CORRECTIONAL SERVICES, | ) | THE EASTERN DISTRICT OF |
| LLC; ERIC J. FOSS; MELVIN EDDY; RON | ) | MICHIGAN |
| ECKERT; ANNA BENSON; SHELIA | ) | |
| BROWN; K. ROUNDS, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: SUTTON, NALBANDIAN, and READLER, Circuit Judges.

SUTTON, Circuit Judge. Carlo Vartinelli has food allergies. An inmate in the Michigan prison system, he alleges that the prison's food contractor and its employees served him food to which he is allergic, causing severe allergic reactions and lasting physical harm. The district court dismissed Vartinelli's § 1983 claim under Civil Rule 12(b)(6) because he failed to identify a sufficient link between the defendants he sued and the harms he suffered. We affirm.

I.

Vartinelli suffers from allergies to fish and peanut products. The Department of Corrections took steps to prevent Vartinelli's exposure to these products. But the precautions did

not always work. Vartinelli has received medical help several times for allergic reactions and twice wound up in the emergency room of a local hospital.

His present lawsuit (he's filed ten others since 1994) concerns a string of incidents at two Michigan prisons in 2014 and 2015. The essential allegation in each case is the same: that indifferent employees served him fish or peanut butter. As for more details, here's what we know from the complaint and the prison grievance records attached to it.

Vartinelli first complained that staff at Muskegon Correctional Facility served him fish and peanut butter on January 23, 2014, after which he spoke with one of the defendants, food-services director and Aramark employee Melvin Eddy. Prison officials at Muskegon then acknowledged Vartinelli's accommodation and promised that "proper substitutions will be made." R. 1-2 at 2. When he complained again on July 2, prison officials "[took] Vartinelli at his word" that he had been served fish and committed to establish more corrective measures. R. 1-3 at 4.

Vartinelli filed two more grievances that year, on August 2 and October 12, alleging that staff served him more fish and peanut butter. The warden acknowledged that Vartinelli received foods "[to] which he is highly allergic," reminded staff of "the seriousness of this issue," and punished one of the workers. R. 1-4 at 4.

Vartinelli's transfer to Macomb Correctional Facility in late November 2014 came with more fish and peanut butter, prompting more grievances. He filed three grievances describing numerous run-ins with defendant and Aramark food-services director Anna Benson. In particular, he complained that Benson refused to honor accommodation requests without the approval of the prison's dietician.

Prison officials at Macomb eventually took steps to accommodate Vartinelli's food allergies. Medical staff contacted Benson, as well as the dietician, about drawing up a new diet

order for Vartinelli at some point in late December 2014. The prison issued a new "therapeutic" diet order with a "no fish/no peanut products" instruction on February 3, 2015, and gave it to Benson. R. 1-6 at 6; R. 1-10 at 2.

All of this took a toll on Vartinelli's health. Since his transfer to Macomb, he has "lost weight" and "suffer[ed] anaphylactic attacks" that "[his] heart cannot continue to take." R. 1-5 at 2. He also complains of "breathing problems" and "nerve damage." Compl. 8.

Vartinelli sued the prison's food-services contractor, Aramark, and six of its employees under § 1983 and on two state-law grounds. He alleged that the company and its employees showed deliberate indifference to his food allergies in violation of the Eighth (and Fourteenth) Amendment, and that they retaliated against him after he complained in violation of the First (and Fourteenth) Amendment. The district court dismissed the complaint for failure to state a claim.

## II.

To survive a motion to dismiss under Civil Rule 12(b)(6), a plaintiff must rest his claim to relief on more than conclusory allegations that the defendant violated the law. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013). A plaintiff must introduce enough factual allegations, accepted as true at the pleading stage, to support a plausible theory of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 669, 678 (2009). Vartinelli's factual allegations come from two places: the statements in his complaint and the nine exhibits attached to the complaint, which consist primarily of the grievance records. We review afresh the court's decision to dismiss Vartinelli's complaint under Civil Rule 12(b)(6). *Mitchell v. McNeil*, 487 F.3d 374, 376 (6th Cir. 2007). Each claim deserves a turn.

*Deliberate indifference.* Prison officials violate the Eighth Amendment when they act with "deliberate indifference" to the "serious medical needs" of prisoners in their custody. *Estelle v.*

*Gamble*, 429 U.S. 97, 104–05 (1976). More than ordinary negligence or medical malpractice is needed. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A plaintiff must allege that "the defendant subjectively ignored [his] medical needs," and that the needs were "objectively serious." *Gibson v. Moskowitz*, 523 F.3d 657, 661–62 (6th Cir. 2008) (quotations omitted).

All agree that Vartinelli's allergies are objectively serious. The question is whether any of the defendants acted with "a sufficiently culpable state of mind" to satisfy the subjective component of a deliberate indifference claim. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004). To proceed to the discovery stage of the case, Vartinelli needed to allege that each defendant subjectively perceived and understood that he "face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). The facts pleaded in Vartinelli's complaint do not support that conclusion as to any of the defendants.

His claims against three Aramark employees—Eric Foss, Sheila Brown, and K. Rounds— suffer from a missing-factual-allegations problem. Take the allegations about Foss, Aramark's CEO. They say at best that Vartinelli tried to contact Aramark executives to complain about the problems he experienced with the company's services, and that he received a response from a company representative speaking on the CEO's behalf, who assured him that the company would accommodate his dietary needs. This does not suffice to support Vartinelli's assertions that Foss "acted with deliberate indifference." R. 1-5 at 2; R. 1-8 at 2.

Of a piece are the allegations against Brown and Rounds. Vartinelli says that both defendants had "actual knowledge" of his allergies and acted with "deliberate indifference" nevertheless. Compl. 6. He identifies Brown by name in the three grievances he filed after arriving

at Macomb in November 2014, and he names Rounds in two grievances filed in late December 2014 and early January 2015. But other than a passing mention in his January 2015 grievance that they "refus[ed] to honor and follow [his] medically prescribed diet," R. 1-7 at 2, Vartinelli does not allege any facts plausibly suggesting that either defendant knowingly served him the contaminated food or failed to take "reasonable measures" to prevent others from doing so. *Farmer*, 511 U.S. at 847. He never alleges any facts to suggest that Rounds, a line-level employee, or Brown, the assistant food-services director at Macomb, personally knew about the severity of Vartinelli's allergies. *See Garretson*, 407 F.3d at 797.

Vartinelli makes more progress, but not enough progress, with other defendants. He plausibly alleges that two defendants—Melvin Eddy and Ron Eckert—knew of his allergies and understood the risk of exposing him to these foods. They signed grievance responses that acknowledged the need to keep allergens out of Vartinelli's food, and explained the measures that staff should take to ensure that Vartinelli would not receive meals contaminated with fish or peanut products. And he plausibly alleges that he nonetheless was exposed to these foods. Even so, he does not allege sufficient facts to meet the deliberate indifference standard. Because the test is not negligence and because "*res ipsa loquitur* does not apply," *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006), Vartinelli must allege facts from which we can infer that Eddy or Eckert "recklessly ignored" his need for an allergen-free diet. *Id.* at 291. But the complaint is conspicuously silent about the point.

Vartinelli's allegations against Anna Benson, the food-services director at Macomb Correctional Facility, suffer from a different problem. Benson, the complaint alleges, knew about the allergies. She just insisted on following the prison's policy of changing an inmate's diet only in accordance with the orders of "a dietitian" who had "instruct[ed] her to do so." R. 1-6 at 2. It

is not reckless behavior to rely on a Department guideline that required consultation between the dietician and health care staff to develop an appropriate "diet detail." R. 1-6 at 6. Vartinelli offers no explanation why Benson's adherence to this procedure was reckless.

That leaves Vartinelli's claim against Aramark. Aramark, of course, is a private entity, not a public body. But because Aramark contracted with the prison to provide basic necessities for inmates in place of the state of Michigan, it plausibly acted under color of state law for purposes of § 1983. *See West v. Atkins*, 487 U.S. 42, 54 (1988). Yet even then, Vartinelli fails to plausibly allege, or allege at all for that matter, that Aramark maintained a policy or custom that disregarded inmates' medical needs, as he needed to do to state a claim against the company. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Resisting this conclusion, Vartinelli maintains that the Civil Rules "do not require a claimant to set out in detail the facts upon which he bases his claim," citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Time, however, has passed *Conley* by. *Iqbal*, 556 U.S. at 670. And while it is true that we wait until summary judgment to judge the sufficiency of a plaintiff's "fact-supported allegations," *Guertin v. Michigan*, 924 F.3d 309, 311 (6th Cir. 2019) (Sutton, J., concurring in the denial of rehearing en banc), the plaintiff still has to allege enough plausible facts to establish a threshold claim for relief. He did not do so.

Vartinelli adds that the misconduct by Aramark's employees suffices to state a claim against the company. He identifies two grounds for doing so: liability for actions taken by company policy-makers and for failing to adequately train and supervise staff. *See Winkler v. Madison County*, 893 F.3d 877, 901 (6th Cir. 2018); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). But he does not point to any facts that plausibly support either contention.

*Retaliation*. To state a retaliation claim under the First Amendment, a plaintiff must allege that he engaged in protected conduct, that he suffered an adverse action, and that there is a causal

connection between the two. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Vartinelli satisfies the first two elements. He alleges that Aramark employees retaliated against him for filing grievances about their failure to accommodate his food allergies. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). And he alleges that the staff retaliated against him by purposely serving him contaminated meals. *See O'Brien v. Mich. Dep't of Corr.*, 592 F. App'x 338, 343 (6th Cir. 2014) (per curiam).

The defect is causation. There is no allegation with respect to it. Vartinelli says we can overlook the problem due to the short time between the grievances and some of the food allegations, pointing in particular to the two times the prison served him peanut butter at Macomb within a couple weeks of filing a grievance against the staff there. But timing rarely suffices by itself to show causation. *See Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001). That is especially so here given this general reality (Vartinelli filed grievances regularly throughout his time in prison) and this specific reality (Vartinelli at the time had just moved to Macomb and no new diet order was in place).

In the alternative, Vartinelli claims that, in response to the December 13 grievance, Benson sent her staff to "harass" and "argue with" Vartinelli and served him unappetizing food. R. 1-7 at 2. Unpleasant though this might be, it would not suffice to deter an inmate of ordinary firmness from speaking out. The Constitution "does not mandate comfortable prisons" or appetizing prison food. *Farmer*, 511 U.S. at 832 (quotation omitted).

We affirm.