NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 20a0607n.06

No. 19-5627

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SETH TAYLOR,

     Plaintiff-Appellee,

v.

DAVIDSON COUNTY SHERIFF'S DEPARTMENT,

     Defendant,

DWAYNE BUTLER; JAMES LEMASTER; JACOB STEEN; JACOB VOYLES,

     Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Oct 26, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

Before: ROGERS, KETHLEDGE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. The medical staff at a detention facility in Davidson County, Tennessee became concerned that inmate Seth Taylor was suicidal. After Taylor refused to speak with a mental health professional, several corrections officers used force to transfer Taylor to a safe room against his will. Taylor filed suit under 42 U.S.C. § 1983, claiming that the officers violated the Eighth Amendment by using excessive force to extract him from his cell. The officers invoked qualified immunity and moved for summary judgment, but the district court denied their motion. For the reasons stated below, we DISMISS the officers' appeal in part, VACATE the district court's order denying summary judgment, and REMAND for further proceedings consistent with this opinion.

I.

While on probation for drug and firearm convictions, Taylor was arrested for aggravated assault. The arrest—and corresponding probation violation—resulted in a mandatory six-month prison term. Taylor was incarcerated at the Davidson County Male Correctional Development Center. While there, he told his mother over the phone that he was "tired of this place," prompting her to become concerned about his mental health. Those concerns were relayed to the medical staff at the facility.

The medical staff ordered that Taylor either speak with a mental health professional or be transported to a safe room. Officer Jacob Steen went to Taylor's cell to ask Taylor whether he would speak with a mental health professional; Taylor refused. When Steen ordered Taylor to stand up for transfer to a safe room, Taylor again refused. Steen then left Taylor's cell and reported the situation to Lieutenant Dwayne Butler, who began assembling an extraction team. Butler put together an extraction team consisting of five officers: himself, Steen, Jacob Voyles, James LeMaster, and Jonathan Rodgers.

The extraction team entered Taylor's cell and ordered him to stand up. When Taylor did not immediately comply, an altercation ensued. The officers sprayed a chemical agent into Taylor's face and then wrestled him onto the floor. The officers placed Taylor's arms and legs into restraints and then carried him out of the cell.

Taylor filed a pro se complaint in federal court under 42 U.S.C. § 1983, naming the Davidson County Sheriff's Office, Butler, Steen, Voyles, LeMaster and Rodgers as defendants. He alleged that the officers violated the Eighth Amendment by using excessive force during the extraction. Specifically, he alleged that the officers "maced, restrained, and choked" him— maliciously and without justification—until he became unconscious. The district court screened

Taylor's complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, concluding that Taylor had sufficiently stated an excessive force claim against Butler, Steen, Voyles, LeMaster, and Rodgers.[1]

The officers moved for summary judgment. They invoked qualified immunity, arguing that Taylor had failed to show whether or how each individual officer had violated his clearly established rights. They also claimed that Taylor had failed to exhaust his administrative remedies as required by the PLRA. Along with their motion, the officers submitted excerpts from Taylor's deposition and sworn declarations from each of the five officers regarding the extraction.

The district court then *sua sponte* ordered the officers to submit a video recording of the extraction. The officers complied, without objection, submitting a five-part video into the record. The video begins with Butler memorializing the purpose of the extraction. He states that the medical staff had ordered Taylor's transfer and that, "if [Taylor] refuse[d], he w[ould] be sprayed with a chemical spray . . . and, at that point, use of force w[ould] be conducted and he w[ould] be removed."

The extraction appears to have played out as Butler predicted. The video shows Taylor lying under a blanket on his bed when the extraction team entered the cell. Butler pulls the blanket off Taylor and orders him to stand up. Taylor lifts his head and seems to ask where he is going— although the exact words are unclear. Butler tells Taylor, "I'm going to give you a last warning." Taylor sits up and puts his feet on the floor but does not stand up. Butler asks Taylor, "Are you going to get up?" Taylor responds, "For what?" At this point, the officers appear to spray Taylor

---

[1] The district court dismissed Taylor's claims against the Sheriff's Office, concluding that it was not a suable entity under § 1983.

with a chemical agent.[2] Butler and two other officers grab Taylor and begin wrestling him toward the ground. A fourth officer wraps his arms around Taylor's neck and appears to place him in a chokehold. Collectively, the four officers drag Taylor to the ground and pin him against the floor. Restraints are placed on Taylor's arms and legs, and he is carried out of the cell.

Taylor filed a response to the officers' summary judgment motion after the video was entered into the record. He claimed that "Officer James LeMaster threated to [']break [Taylor's] f***ing neck,['] while applying a choke-hold which resulted in [his] temporarily losing consciousness." He further stated that he sustained "serious injuries to his hand and wrist" during the extraction and that the officers intentionally inflicted unnecessary pain. Other than these statements, Taylor submitted no evidence prior to the district court's summary judgment ruling.

The district court sided with Taylor. First, the court concluded that there was insufficient evidence in the record to establish that Taylor had failed to properly exhaust his administrative remedies. Second, viewing the video in the light most favorable to Taylor, the court concluded that a reasonable jury could find that all the officers except Rodgers had used wanton and unnecessary force against Taylor in violation of the Eighth Amendment. In particular, the court found that three discrete uses of force could justify that verdict: (1) the deployment of the chemical spray; (2) the use of a chokehold; and (3) the method in which the officers carried Taylor from the cell. Accordingly, the district court denied summary judgment to Butler, Steen, LeMaster, and Voyles. This appeal followed.

---

[2] The officers admit that a "brief blast of chemical spray was deployed" against Taylor. The use of the spray, however, is not apparent in the video; the only indication is a slight grimace on Taylor's face as the officers move in to wrestle him to the floor.

II.

*Exhaustion.* The officers argue that Taylor failed to exhaust his administrative remedies as required by the PLRA. Under the PLRA, a prisoner cannot bring a federal claim related to his confinement until he has exhausted "such administrative remedies as are available." 42 U.S.C. § 1997e(a). "Available" remedies include all optional levels of administrative review provided by the facility. *Owens v. Keeling*, 461 F.3d 763, 770 n.4 (6th Cir. 2006). Here, Taylor filed a grievance with the facility concerning the force used during the extraction. The officers claim that Taylor failed to appeal the denial of that grievance and, therefore, failed to exhaust his administrative remedies.

We lack jurisdiction to decide this issue. Our appellate review is limited to "final decisions" from the district court. 28 U.S.C. § 1291. Typically, an order denying summary judgment is not an appealable final order. *Diluzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). Orders denying qualified immunity are an exception to that general rule. *Id.* We have held, however, that whether a prisoner has fulfilled the PLRA's exhaustion requirement is "not linked closely enough" to the denial of qualified immunity to allow the exercise of pendent jurisdiction on an interlocutory appeal. *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 752 (6th Cir. 2015). Accordingly, we lack jurisdiction to review this claim.

*Qualified Immunity.* The officers argue that the district court erred by not conducting an individualized analysis of each officer's liability.[3] We agree.

---

[3] The officers raise two additional claims: (1) that the district court erred by *sua sponte* ordering the video of the extraction into the record and then denying qualified immunity based on the evidence contained in the video; and (2) that the district court erred by not deeming certain facts admitted pursuant to its local rules. But the officers failed to present these arguments before the district court, so we decline to address them now. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 699–700 (6th Cir. 2006). The officers protest that they had no opportunity to object to the

Qualified immunity is an affirmative defense that shields public officials from suit unless their actions violate clearly established law. *Hopper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018). It is also a personal defense. *See Stoudemire v. Mich. Dep't of Corrs.*, 705 F.3d 560, 570 (6th Cir. 2013). Each officer is immune from suit unless his specific conduct violated clearly established law. *Id.* Thus, "it is well-settled that qualified immunity must be assessed in the context of each individual[] [officer's] specific conduct." *Id.* (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012)). This individualized analysis is particularly important when the merits of the underlying constitutional claim depend on the subjective intent of each officer. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 797 (6th Cir. 2005). In such cases, "t[he] subjective component must be addressed for each officer individually." *Id.*

Here, Taylor alleged that the officers' use of force during the extraction violated the Eighth Amendment's prohibition on "cruel and unusual punishments." U.S. Const. amend. VIII. That provision proscribes "the unnecessary and wanton infliction of pain" against prisoners. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). Accordingly, Taylor's claim has both a subjective and objective component. *Id.* The subjective component requires him to show that the officers used force "maliciously and sadistically for the very purpose of causing harm" rather than in a "good faith effort to maintain or restore discipline." *Id.* at 6. The objective component requires Taylor to show that the amount of force used was "sufficiently serious" to warrant protection under the Eighth Amendment. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citation omitted).

---

district court's neglect of its local rule, given that the magistrate judge did invoke it. But the officers easily could have raised this error in the motion that they filed under Rule 60(b); they instead raised only the exhaustion issue. In any event, we generally treat the district court as the "final arbiter of its own local rules." *Valassis Commc'ns, Inc. v. Aetna Cas. & Sur. Co.*, 97 F.3d 870, 873 (6th Cir. 1996).

The officers have conceded that Taylor satisfied the objective component sufficiently to survive summary judgment.

The district court held that a reasonable jury could find that Butler, Steen, LeMaster, and Voyles had used wanton and unnecessary force against Taylor. But in reaching that conclusion, the court analyzed the officers' actions and intent collectively. For example, the district court noted that "*one of the officers* appear[ed] to spray Plaintiff with the chemical spray." (Emphasis added). But the court neither names the "one" nor excuses the others. And, although the court denied qualified immunity to both Steen and Voyles, its analysis neither mentions them by name nor imputes any individualized liability to them. Instead, the court analyzed whether "the Defendants" were entitled to qualified immunity. Qualified immunity requires a much more officer-specific approach. *See Phillips v. Roane County*, 534 F.3d 531, 542 (6th Cir. 2008) ("Where, as here, the district court is faced with multiple defendants asserting qualified immunity defenses, the court should consider whether each individual defendant had a sufficiently culpable state of mind."). The district court therefore erred in failing to individually assess whether Butler, Steen, LeMaster, and Voyles violated Taylor's clearly established rights. On the record before us, we think it appropriate to remand to the district court "for the purpose of properly evaluating [the officers'] qualified immunity defense." *Stoudemire*, 705 F.3d at 571. On remand, the district court should conduct an officer-by-officer analysis to "ensure that [each] defendant's liability is assessed based on his own individual conduct and not the conduct of others." *Pollard v. City of Columbus*, 780 F.3d 395, 402 (6th Cir. 2015).[4]

---

[4] The district court suggested that even those officers not directly involved in the use of force could nevertheless be liable for "failing to intervene" or "supervis[ing] the officer who used excessive force." But, even under these theories, an officer can only be liable for his own conduct. *See Pineda v. Hamilton County*, --- F.3d ---, 2020 WL 5868402, at *6 (6th Cir. Oct. 2, 2020).

We also note that the district court appeared to apply the wrong standard when assessing the officers' subjective intent. For example, the court relied on its belief that a reasonable jury could find that "the use of a chemical spray was unnecessary" and that more force than needed was used. But the subjective-intent standard turns not on the necessity of the force, but on whether it was inflicted "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 5. The Supreme Court has instructed that, when assessing subjective intent, courts should consider "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, . . . the extent of injury inflicted, . . . the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (citation omitted); *see also Cordell*, 759 F.3d at 581–84 (applying the *Whitley* factors). And although the necessity of the force is a factor in this analysis, "[t]he issue is . . . not whether the use of force was absolutely necessary in hindsight, but 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010) (quoting *Whitley*, 475 U.S. at 321).

---

Moreover, "[w]e have questioned whether a plaintiff can raise [a] failure-to-intervene claim in summary-judgment briefing without adequately pleading it in a complaint." *Id.*; *see also Shanaberg v. Licking County*, 936 F.3d 453, 457 (6th Cir. 2019). Taylor's complaint did not specifically plead failure-to-intervene or supervisory claims; nor did he even allude to such theories in his response to the officers' motion for summary judgment. It was the district court that first raised these theories in the order denying the officers' motion for summary judgment. It is unsurprising, therefore, that none of the officers' briefing in the district court addressed these theories. We recognize, however, that both Taylor's complaint and his summary judgment response were drafted *pro se*. Now represented by counsel, we leave it to Taylor's counsel on remand to demonstrate how the officers would not be prejudiced by considering these theories as part of the individualized assessment of the officers' liability.

In evaluating the officers' claim for summary judgment, then, the district court must assess each officer's conduct individually, keeping in mind that it is Taylor's burden to "identify affirmative evidence from which a jury could find that" each individual officer acted with "the pertinent motive," *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998)—a "malicious and sadistic intent to cause harm," *Cordell*, 759 F.3d at 581.

\* \* \*

For the foregoing reasons, we DISMISS the officers' appeal in part, VACATE the district court's order denying summary judgment, and REMAND for further proceedings consistent with this opinion.